Bradley, J.
No written assignment of the policy was made by Thomas Dunn, Jr., the insured, to his mother Catherine Dunn, but there is evidence tending to prove that on the 20th day of July, 1885, he delivered it to her with the intent to vest title in his mother as a gift to her. And although there is some conflict in the evidence on the subject whether it was delivered as such, or as security to her for money derived by him from a loan secured by a mortgage made by her and her husband upon a farm in which she had an interest in common with the latter, the evidence was sufficient to support the conclusion of the surrogate that the policy was by the delivery transferred to her as an absolute gift, and received by her as such. No written transfer was necessary but the unqualified delivery of the policy to her for the purpose of vesting title in her was sufficient to produce that result. Marcus v. St. Louis Mut. Life Ins. Co., 68 N. Y., 625.
It follows that the surrogate was justified in refusing to surcharge the account of the administrators with the amount of the proceeds of the policy, and that Catherine Dunn was entitled to them unless there is some other obstacle in the way of her claim, which goes in the support of that of the creditors. It is contended on the part of the appellants that the transfer to her was fraudulent as against the creditors of the decedent, because he was then insolvent.
The question of jurisdiction of the surrogate’s court to try that question does not appear to have been raised in the court below, nor is it raised here, and therefore will not be considered. At the time of his death, in September, 1885, the personal assets of the deceased were not sufficient to pay more than thirty per cent of the amount of the debts he. left unpaid, and assuming that he had no real estate, and it does not appear that he had, his estate was insolvent. But the surrogate has found that he was solvent at the time he gave the policy to his mother. He at that time had rented a store in the city of Auburn for the term of five years at an annual rental of $1,150, in which he commenced mercantile business about the 1st of August, 1885; and although after his death $1,200 was considered the fair, annual rental value under the lease for the term, there is ¡evidence tending to prove, or which fairly permitted the *843 inference, that at the time in question the rental value was about equal to the rent he undertook by the lease to pay. He had then purchased a stock of goods, which he had on hand and was about to proceed to sell, and his miscellaneous indebtedness was about eleven hundred dollars. To enable him to start in business he, with his father Thomas Dunn, Sr., had executed a bond conditioned for the payment of $3,000, secured by mortgage made by his father and mother on their farm, upon which a loan was obtained of that amount. This was received by the decedent in July, 1885, and prior to the gift of the policy to his mother. The evidence permitted the conclusion of the surrogate, that the money so received was a gift to him by his father, and was so treated. And afterwards, and on the twentieth of the same month, the latter made and acknowledged a formal statement to that effect, which was probably done with a view to the credit of the son as well as to furnish evidence of the fact, inasmuch as the latter was apparently liable as a principal on the bond.
The money having been given to him by the father, his relation was that of surety on the bond, and for his protection the primary charge as between him and his father was upon the land through the mortgage which, it may be assumed, was of value sufficient to pay the amount, as no claim is made to the contrary, and, therefore, such liability of the son did not go to increase his indebtedness.
The evidence did not require the conclusion that the decedent was insolvent at the time of the gift of the policy to his mother, or that he then did not have means adequate to the payment of his debts. And it does not appear that the gift was made with any actual intent to defraud his creditors, present or future. It is, however, contended by the appellant’s counsel that the administrators received the proceeds from the policy, and should be required to account for them.
The money was not received by them or treated by the administrators as assets of the estate they represented. The proofs and claim were made by Catherine Dunn as alleged owner, but inasmuch as there was no written assignment to her the insurance company required that they execute a release to the company, which they did pursuant to an agreement between them, Catherine Dunn and the depositary, to the effect that the fund should be deposited to await the result of judicial determination of the right to it, and in such agreement it was stated that the policy had been assigned to her.
The administrators, so far as appears, have not had the control of the money, or claimed the right to it as such assets.
*844 None of the exceptions to the finding, or to the refusals of the surrogate to find as requested, were well taken.
The mother retained in her possession the policy from the time it was delivered to her by her son. And on the day and after his death, Babcock having been requested by the father to aid him in the matters relating to tho estate, called at the house and asked Mrs. Dunn for the policy, and it was shown to him, and he expressed to her his purpose to take it to Auburn, to which she at first objected and said it belonged to her. He took the policy away and returned it to her the evening of the same day. This evidence of what she said on that occasion was taken under the objection of the appellants, and was received by the court below solely for the purpose of characterizing the possession then taken by Babcock of the policy.
It seems to have been competent as part of the res gestee,. Thomas Dunn was examined as a witness on the part of the administrators, and gave evidence of conversations had by him and Mrs. Dunn with the decedent, to which objection was taken that it was incompetent within section 829 of the Code Civil Procedure. We think this objection was not well taken. This witness was an administrator. The evidence was given in behalf of the administrators, not against them; and was offered as tending to prove that they were not chargeable with the proceeds of the policy, and was competent. In re Frazer, 92 N. Y., 240. The fact that the witness was as administrator a party, did not render him incompetent to testify to personal transactions with the decedent. In re Wilson, 103 N. Y., 374. And as next of kin or otherwise he had no interest in the event as against the creditors, but if he had" any legal interest it was in the direction of increasing the amount of the assets of the estate, and therefore there is no support for the objection made in their behalf. Carpenter v. Soule, 88 N. Y., 252; Nearpass v. Gilman, 104 id., 506; 5 N. Y. State Rep., 745.
We are not prepared to hold that the creditors of the decedent have the relation of persons deriving title through or under him within the meaning of the statute so as to enable them to raise the objection as against evidence offered in behalf of the administrators. In re Frazer, supra. But the view taken renders it unnecessary to, and we do not express any opinion on that question.
There is no occasion upon the evidence for the appellants to complain of the finding that one-half the-amount of the Rosa note was chargeable to the estate. ■ It was made by the decedent and his father, and they apparently were jointly liable to pay it. It does not appear for what purpose or for whose benefit other than is imported by its *845 terms the note was made. All of the exceptions have been examined and none of them appear well taken.
The judgment should be affirmed, with costs, payable out of the estate..
Smith, P. J., Barker and Haight, JJ., concur.